UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MARIA SEVERINO,
                          Plaintiff,    :    07 CV 941(HB)
                                    :    **OPINION & ORDER**
  -against-                         :

AMERICAN AIRLINES,         :
                    Defendant.    :
------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., United States District Judge:**

        Following a jury verdict for Defendant American Airlines on her negligence claim, Plaintiff Maria Severino moves for a new trial pursuant to Fed. R. Civ. P. 59 on the grounds that (1) the verdict was against the weight of the evidence; and (2) the jury improperly considered facts not in evidence. For the reasons that follow, Severino's motion is DENIED.

## I.    BACKGROUND

        In this case, Severino alleged that in January 2004 she slipped and fell in a stairwell in Terminal 9 at New York's John F. Kennedy Airport, which was [leased and maintained] by American Airlines and where she was employed as a janitor. Severino's principal contention was that American Airlines was negligent in its maintenance of Terminal 9 because it failed to keep the roof of the building free from leaks, which, according to Severino, caused water to accumulate on the stairwell where she fell a few days after heavy rains. Severino testified that on the day of the accident she was assigned to clean in Terminal 9 for the first time, and when she entered a stairwell to find the employee lunchroom in Concourse "D," she slipped, fell, and severely injured her back. Trial Transcript, 2/9/2009 ("Tr.") at 46, 46.

        Defendant interposed several defenses, including raising doubts as to Severino's credibility. For example, on cross-examination it became apparent that Severino could not locate that area in Terminal 9 in which the accident occurred; during her direct testimony she marked a diagram of the terminal to indicate where she slipped but this contradicted her deposition testimony about where she fell. Tr. at 76-77. After Severino testified that she never told anyone the accident occurred in the lobby of her apartment

building, her credibility was further called into question by hospital records dated two weeks after the accident that stated Severino reported falling in the lobby of her apartment building two weeks earlier. See Tr. at 80-81.  The testimony of Severino's former supervisor, Gonzalo Beltran, contradicted Severino's testimony in several respects.  While Severino testified that Beltran helped her up and took her down to the lunchroom after her fall, Tr. at 46, Beltran testified that he did not recall being present at the site of the accident. Tr. at 101.  Beltran also testified that Severino continued to work after the accident, and he observed her walking without difficulty one to two months later.  Tr. at 103.

This Court's rulings pertaining to the admissibility of Severino's workers' compensation file are of some relevance to Severino's claims that the jurors improperly considered extraneous prejudicial information.  Initially, the parties agreed to submit Severino's voluminous workers' compensation file as a joint exhibit, but shortly before trial the Defendant withdrew its proposed exhibit and opposed Severino's introduction of the entire file because the medical records in the file were cumulative.  The Defendant also opposed introduction of a letter from a workers' compensation insurance carrier that set forth the amount of the lien the carrier would be able to assert on a compensatory damages award, although the Defendant was willing to stipulate to the amount paid for medical treatment.  Tr. at 3.  I ruled that lien letter would not be admitted into evidence but that the Plaintiff could testify about her lost wages.  *Id.* I also commented that I intended to avoid "confusing the jury with Workers' Comp. issues." Tr. at 3.  Finally, after I contacted the treating physician directly and received a copy of his *curriculum vitae*, I allowed certain of the medical files from the workers' compensation file to be admitted into evidence. Tr. at 88.  Although prior to jury selection I informed counsel that I did not want "workers' comp to gloss over this trial," I never precluded evidence that Severino in fact received workers' compensation payments following her injury.

Upon the close of the evidence, I charged the jury that in rendering their verdict they were to consider only the evidence—i.e. sworn testimony, exhibits, and stipulations—and that they were not to consider anything they may have seen or heard outside of the courtroom.  I provided the jury with a special verdict sheet that asked them to consider separately the elements of Plaintiff's negligence claim.  The jury deliberated

2

for approximately thirty minutes before they reached a verdict.  The jury returned a verdict for the Defense by answering the first question on the verdict sheet in the negative: "Has Ms. Severino proved, by a preponderance of the evidence, that she slipped and fell and was injured on a stairway in Terminal 9 of the Kennedy Airport?"

Following the jury's verdict, Severino's attorneys spoke on separate occasions with two of the jurors.  According to the affirmation of attorney Steven Hoffner, Juror No. 8 informed Mr. Hoffner that the jury discussed the issue of workers' compensation and the absence of testimony about Plaintiff receiving workers' compensation payments led them to conclude that she was not in fact injured in Terminal 9.  Attorney Affirmation of Steven Hoffner, dated February 11, 2009.  Attorney Jan Blau spoke with Juror No. 2 by telephone. According to Blau's affirmation, Juror No. 2 concurred that the issue of Plaintiff receiving workers' compensation payments had been discussed in the jury room. Affirmation of Jan O. Blau, dated February 17, 2009.

## II.     DISCUSSION

### A.  The Verdict Was Not Against the Weight of the Evidence.

"For a district court to order a new trial under Rule 59(a), it must conclude that the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice, i.e., it must view the jury's verdict as against the weight of the evidence." *Manley v. AmBase Corp.*, 337 F.3d 237, 245 (2d Cir. 2003) (internal quotations marks, and alterations omitted)).   Although in considering a motion for a new trial pursuant to Rule 59(a) "'a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner,'" *Malmsteen v. Berdon, LLP*, 595 F.Supp.2d 299, 304 (S.D.N.Y. 2009) (quoting *Manley*, 337 F.3d at 244-45), the standard for granting such a motion is high and rulings on motions under Rule 59(a) "'are committed to the sound discretion of the district court ....'" *Id.* (quoting *Sequa Corp. v. GBJ Corp.,* 156 F.3d 136, 143 (2d Cir.1998)).

Here, the jury's verdict cannot be said to be "against the weight of the evidence" or a "seriously erroneous result."  Through cross-examination of Severino, the Defendant not only established that she offered conflicting accounts of where in the terminal she fell, but also undermined her credibility by demonstrating her testimony about the location of her fall conflicted with certain of her hospital records.  Severino's credibility

was further weakened by the testimony of Gonzalo Beltran, who contradicted Severino's account of the events that immediately followed her alleged fall in the stairwell and testified that he observed her walking without difficulty one to two months later, which tended to discredit Severino's claims of near total disability. Tr. at 101.  In short, the significant questions raised by the Defendant about Severino's version of the events were sufficient evidence upon which the jury could legitimately base its conclusion that Severino failed to prove she fell and was injured in the American Airlines' terminal. Consequently, Severino's motion for a new trial on the grounds that the verdict is against the weight of the evidence is DENIED.

### B.  Alleged Juror Misconduct Does Not Warrant a New Trial.

"[T]here is no question that a federal court's review into jury deliberations, even a criminal jury's deliberations[,] is a decidedly limited enterprise." *Anderson v. Miller*, 346 F.3d 315, 327 (2d Cir. 2003).  "Courts properly avoid . . . explorations into the jury's sovereign space and for good reason. The jury's deliberations are secret and not subject to outside examination. *Yeager v. U.S.*, ---- S.Ct. ----,  2009 WL 1685935, *8 (June 18, 2009) (internal citation omitted).  Thus, Federal Rule of Evidence 606(b) precludes a Court from inquiring "into the 'mind or emotions' of deliberating jurors." *Manley*, 337 F.3d at 251 (quoting *United States v. Thomas,* 116 F.3d 606, 620 (2d Cir.1997) ("The mental processes of a deliberating juror with respect to the merits of the case at hand must remain largely beyond examination and second-guessing, shielded from scrutiny by the court as much as from the eyes and ears of the parties and the public.").  To this end, Rule 606(b) limits admissible juror testimony to (1) whether extraneous prejudicial information was improperly brought to the juror's attention; (2) whether any outside influence was brought to bear on jurors; or (3) whether there was a mistake in entering the verdict on to the verdict form.  The Court cannot receive evidence concerning any statement of a juror on a matter about which the juror would be precluded from testifying.

As an initial matter, the alleged statements of the jurors set forth in the attorney affidavits are hearsay and the affidavits do not meet the "stringent requirement" that must be satisfied before jurors will be hauled into court to provide evidence about facts which might suffice to set aside a verdict. *See United States v. Abcasis*, 811 F.Supp. 828, 836 (E.D.N.Y. 1992).

4

But even if the hearsay statements in the affidavits could be considered, they do not establish that the jury considered "extraneous prejudicial information" in reaching their verdict.[1]  But the *absence* of evidence is not "extraneous prejudicial information" because it is not a fact that "'enter[ed] the jury room through an external, prohibited route'" but rather it is "'part of the trial, and [is] part of the information each juror collected.'" *U.S. v. Stewart*, 433 F.3d 273 (2d Cir. 2006) (quoting *United States v. Rodriguez*, 116 F.3d 1225, 1227 (8th Cir.1997)).  Just as a criminal defendant's failure to testify is not "extraneous prejudicial evidence," so too was the absence of testimony about workers' compensation payments "part of [this] trial."[2] *Rodriguez*, 116 F.3d at 1227.  Furthermore, any reliance placed by jurors on their "general knowledge" that individuals who are injured in the workplace receive worker's compensation insurance, is not "extraneous prejudicial information" because "life experiences do not constitute extraneous prejudicial information and may be brought into the jury room." *Marcavage v. Bd. of Trustees*, 400 F.Supp. 2d 801, 805 (E.D. Pa. 2005).  Therefore, evidence that the jury considered the absence of evidence about workers' compensation or their personal knowledge on the subject testimony is inadmissible under FRE 606(b) and cannot be used to impeach the jury's verdict.

Precluding the juror's statements leaves no competent evidence that the jury considered extraneous prejudicial information to support Plaintiff's motion for a new trial on this ground.  Accordingly, Severino's motion for a new trial on the basis of juror misconduct is DENIED.

---

[1] Because there is no contention that he jury was subjected to improper outside influence or that they made a mistake in transcribing their verdict, the only potentially plausible means by which to introduce the juror's testimony is the Plaintiff's argument that their alleged consideration of the absence of testimony about workers' compensation payments constitutes "extraneous prejudicial information."  *See* Fed. R. Evid. 606(b).

[2] Although I excluded the letter that established the amount of the lien the workers' compensation carrier would have on a compensatory damage award and cautioned that I sought to "avoid confusing the jury with workers' comp. issues" and did not want "workers' comp to gloss over this trial," Tr. at 3, 9, nothing prevented the Plaintiff from introducing other evidence or soliciting testimony about whether she in fact received workers' compensation payments.  Plaintiff was free to introduce such evidence but chose not to do so.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for a new trial pursuant to Fed. R. Civ. Pro. 59(a) is DENIED. The Clerk of the Court is instructed to close this motion and remove this case from my docket.

SO ORDERED
June 23, 2009
New York, New York

　　　　　　　　　　　　　　　　　　　　　　U.S.D.J.